# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRIAN LEE COLEMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-17-436-SPS |

## OPINION AND ORDER

The claimant Brian Lee Coleman requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was thirty-one years old at the time of the administrative hearing (Tr. 45). He has a high school education and has worked as a carpet cleaner (Tr. 45, 59). The claimant alleges he has been unable to work since April 30, 2013, due to schizophrenia, attention deficit hyperactivity disorder ("ADHD"), and depression (Tr. 219).

**Procedural History**

On May 26, 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 10, 190-99). ALJ Larry D. Shepherd conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 24, 2016 (Tr. 10-26). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations: (i) understand, remember, and carry out simple, routine, and repetitive tasks; (ii) relate to supervisors and coworkers on a superficial work basis; (iii) respond to usual work situations; and (iv) no contact with the general public (Tr. 14). The ALJ then concluded that although the

claimant could not return to his past relevant work, he was nevertheless not disabled because there was work that he could perform in the national economy, *e. g.*, linen room attendant, machine packager, and hand packager (Tr. 24-25).

**Review**

The claimant contends that the ALJ erred by failing to properly evaluate his subjective statements. More specifically, he asserts that the ALJ failed to consider whether he had a valid reason for noncompliance with treatment, and that the ALJ improperly relied on the absence of any limitations from a treating or examining source, improperly relied on his activities of daily living, and did not properly consider the statements from his mother, stepfather, brother and sister. The Court agrees that the ALJ did not properly evaluate the third party statements in the record, and finds further error with respect to the ALJ's analysis of the medical source statements provided by the claimant's case manager. The decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of schizoaffective disorder, ADHD, depression, and rule out borderline intellectual functioning (Tr. 12). The relevant medical records reveal that the claimant was admitted for inpatient mental health care at Red Rock Behavioral Health Services in May 2012, June 2013, and May 2015 due to suicidal ideation (Tr. 396-415). He was stabilized on medication and discharged with a diagnosis of major depressive disorder from all three courses of treatment, as well as malingering in June 2013, and unspecified psychosis in May 2015 (Tr. 438-59). The claimant did not follow up with outpatient treatment after his May 2012 and June 2013

inpatient admissions but presented twice for medication management/review after his May 2015 admission (Tr. 1145-49).

On August 21, 2015, state agency psychologist Jason Gunter, Ph.D. reviewed the record and found the claimant was markedly limited in his ability to understand, remember, and carry out detailed instructions, and to interact appropriately with the general public, as well as moderately limited in his ability to maintain attention and concentration for extended periods (Tr. 73-75). Dr. Gunter concluded that claimant could perform simple one or two step tasks with routine supervision, interact appropriately with coworkers and supervisors for incidental work purposes, adapt to a work setting and some changes in work settings, but should avoid contact with the general public (Tr. 75). These findings were affirmed on review (Tr. 98-100).

The claimant was also admitted for inpatient mental health care at Mental Health Services of Southern Oklahoma Crisis Stabilization Unit ("CSU") in May 2015 and October 2015 due to suicidal ideation (Tr. 1041-53, 1078-1106). He was stabilized on medication and discharged with a diagnosis of psychotic disorder not otherwise specified and cannabis abuse in May 2015, and schizoaffective disorder depressive type in October 2015 (Tr. 1041, 1078). Following his October 2015 inpatient treatment, the claimant consistently presented for medication management/review appointments through at least June 2016 (Tr. 1166-67, 1178-89). These treatment notes reflect that the claimant's schizoaffective disorder was improving through March 2016, was stable in April 2016, but was worsening by June 2016 (Tr. 1178-89).

Also following his October 2015 inpatient treatment, the claimant consistently attended case management appointments with George Burr, II, an LPC candidate, through at least June 2016 (Tr. 1168-76). By November 2015, the claimant reported minimal depression and anxiety, and no hallucinations when taking his medication (Tr. 1177). Thereafter, the claimant reported increased anxiety in February 2016 related to a break-in at his home, but that his stress and depression improved after he moved (Tr. 1169, 1173).

On December 7, 2015, Dr. Margeurite Langille-Hoppe conducted a psychological consultative examination of the claimant (Tr. 1151-53). She observed that the claimant had an appropriate affect, unremarkable mood, and concrete thought processes, communication, ability to follow directions, attention, and concentration (Tr. 1151). She indicated that the claimant may have been attuning to internal stimuli during the interview, but noted it was not clear (Tr. 1151-52). Dr. Langille-Hoppe found that the claimant was fully oriented and had no problems with his working or delayed memory (Tr. 1152). In her summary, she indicated that the claimant may underreport his symptoms, but that neither the provided records nor his self-report gave additional insight regarding his mental health problems and onset of symptoms (Tr. 1152). She made the provisional diagnoses of unspecified psychotic disorder, rule out alcohol use disorder, rule out borderline intellectual functioning (Tr. 1153).

On February 5, 2016, Mr. Burr completed a form titled "Medical Statement Concerning Schizophrenia for Social Security Disability Claim." (Tr. 1155-56). He opined that the claimant was extremely impaired in eleven aptitudes related to his ability to work, including his ability to understand, remember, and carry out short and simple instructions;

maintain attention and concentration for extended periods; and sustain an ordinary routine without special supervision (Tr. 1156). Mr. Burr indicated that the claimant was markedly impaired in five aptitudes, including his ability to make simple work-related decisions, interact appropriately with the general public, and accept instructions and respond appropriately to criticism from supervisors (Tr. 1156). Mr. Burr also indicated that the claimant was moderately impaired in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness (Tr. 1156).

On March 23, 2016, Mr. Burr wrote a letter wherein he briefly summarized the claimant's mental health treatment, and noted that the claimant was compliant with treatment, had not missed any appointments, and that his medications were only slightly effective (Tr. 1157). Mr. Burr also opined that the claimant was unable to work (Tr. 1157).

The record also contains a number of Third Party Function Reports and letters submitted by the claimant's mother, stepfather, brother, and sister. His mother completed both a report and a letter, and indicated that the claimant had difficulty following directions, was "absent-minded," and required reminders for daily tasks including personal care, taking medication, and attending appointments (Tr. 239-46). Additionally, she stated she has observed the claimant interacting with people when no one else was present and reacting violently over the telephone (Tr. 322-25). She further indicated that the claimant's medications make him sleep a lot (Tr. 324). Christopher Berry, the claimant's stepfather, stated in November 2015 that the claimant must be told how to do everything step-by-step, "walks off" if not supervised, is unable to stay focused, and requires reminders to shower,

take medication, and carry out the trash (Tr. 287-94). In an undated letter, the claimant's brother recounted instances where the claimant interacted with people who were not there and violently attacked him (Tr. 326). In June 2016, the claimant's sister stated that the claimant has always had difficulty concentrating and controlling his anger, and that he experiences depression and anxiety every day (Tr. 331-32). She stated that his medications are not effective and make him sleepy (Tr. 332). She indicated that the claimant would require constant supervision at any job due to his forgetfulness (Tr. 332). At the administrative hearing, the claimant's attorney suggested that these third party statements were more helpful than Mr. Coleman's own statements because he tended to underreport his symptoms (Tr. 57, 61-62).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony and the medical record. He gave little weight to Mr. Burr's medical source statements because they were inconsistent with one treatment note from November 2015 and other (unspecified) medical evidence and because he opined on an issue reserved to the Commissioner (Tr. 23-24). The ALJ gave great weight to the state agency psychologists' opinions, finding they were consistent with: (i) the medical evidence reflecting that the claimant only recently began outpatient treatment, (ii) the claimant's activities of daily living, (iii) the ALJ's own findings, and (iv) an (unspecified) normal mental status examination (Tr. 23). The ALJ also thoroughly summarized the Third Party Function Report submitted by the claimant's mother, but did not mention or discuss the Third Party Function Report submitted by his stepfather, or the letters provided by his siblings. In discussing the claimant's subjective statements, the ALJ concluded that the claimant's

-8-

complaints of significant limitations were not consistent to the extent alleged (Tr. 22). In support, he found: (i) the claimant made numerous inconsistent statements regarding his alcohol and illegal drug use; (ii) the claimant was not always compliant with treatment and medications; (iii) medications effectively treated the claimant's depression, anxiety, and hallucinations; (iv) no treating or examining source placed permanent limitations or restrictions on the claimant's ability to perform basic work activities; and (v) the claimant's daily activities were not as limited as expected given his complaints (Tr. 22-23).

Social Security regulations provide for the proper consideration of "other source" opinions such as those provided by Mr. Burr herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006).[2] *See also Id.* at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.").

The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent

---

[2] SSR 06-03p was rescinded for claims filed on or after March 27, 2017. *See* 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017). The claimant protectively filed his claim in May 2015, before SSR 06-03p was rescinded, thus it is applicable in this case.

with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See Id.* at *4-5; 20 C.F.R. §§ 404.1527(d), 416.927(d). Although the ALJ referred to some of these factors, and arguably considered the second factor of consistency, he did not mention or discuss any of the other factors when analyzing Mr. Burr's opinion. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original]. Instead, the ALJ rejected Mr. Burr's opinions because they were inconsistent with a single treatment note and concerned an issue reserved to the Commissioner, then neglected to discuss the remaining evidence. *See Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004). In making such finding, the ALJ completely ignored Mr. Burr's observations of the claimant, including the waxing and waning nature of his symptoms and his compliance with treatment, as well their treatment relationship. *See, e. g., Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984). This analysis was particularly important because Mr. Burr was the claimant's case manager for more than five months prior to issuing his opinion, and his opinion is the only one in the record from a treating provider, albeit a treating "other source" provider.

Additionally, although the ALJ was not required to give controlling weight to Mr. Burr's opinion that the claimant could not work, *see, e. g.,* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), he *was* required to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. §§ 404.1527, 416.927.

Social Security Ruling 06-03p also provides the standards for evaluation of third party evidence such as that provided by the claimant's family members. Other source evidence, such as functional reports or testimony from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) the nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. The ALJ summarized the Third Party Function Report submitted by the claimant's mother, but provided no analysis at all, and did not mention or discuss the evidence provided by his stepfather, brother, and sister. This error is notable when combined with the additional error related to evaluation of Mr. Burr's opinion and also in light of the suggestion by both the claimant's attorney and Dr. Langille-Hoppe that the claimant may underreport his mental health symptoms (Tr. 61-62, 1152).

Because the ALJ failed to properly analyze evidence of record as to the claimant's mental limitations, the Commissioner's decision must be reversed and the case remanded for further analysis by the ALJ. If such analysis results in adjustments to the claimant's

RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 21st day of March, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**